**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE THIRD PARTY SUBPOENAS AD
TESTIFICANDUM

INGENUS PHARMACEUTICALS, LLC
And LEIUTIS PHARMACEUTICALS LLP,

        Plaintiffs,

        v.

NEXUS PHARMACEUTICALS, INC.,

        Defendant.

Case: 1:23–mc–00008
Assigned To : Kollar–Kotelly, Colleen
Assign. Date : 1/26/2023
Description: MISC

Case No. Northern District of Illinois
Civil Action No. 22–cv–02868

**NON-PARTY CHIDAMBARAM S. IYER, ESQ.'S MOTION TO QUASH SUBPOENA,**
**FOR A PROTECTIVE ORDER AND FOR SANCTIONS**



**RECEIVED**

01/26/2023

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**I. Introduction**

Chidambaram "Chid" S. Iyer, Esq. of Sughrue Mion, PLLC ("Sughrue"), litigation counsel to Ingenus Pharmaceuticals, LLC, and Leiutis  Pharmaceuticals LLP (collectively "Plaintiffs"), moves this Court for an Order quashing a deposition subpoena[1] served on him by Nexus Pharmaceuticals, Inc. ("Nexus" or "Defendant"), prohibiting his deposition, and for a protective order against all further discovery by Defendant.  This motion is necessary because Defendant has subpoenaed Mr. Iyer in connection with the very patent Plaintiffs have asserted against Defendant in the underlying litigation. Also, there has already been a Rule 30(b)(6) deposition on the topic Defendant seeks information about (communications with the U.S. Patent and Trademark Office ("USPTO") examiner), the testimony sought is completely encompassed by the public USPTO record of the prosecution of the patent, and, as Mr. Iyer was the patent applicant's counsel, the testimony is privileged.

Litigation counsel are presumptively entitled to a protective order against being deposed by an adversary.  In the present case involving Plaintiff's counsel Mr. Iyer, Defendant has not overcome that presumption.

**II.     Background and Summary of Argument**

Ingenus  Pharmaceuticals,  LLC,  and  Leiutis  Pharmaceuticals  LLP  sued  Nexus Pharmaceuticals, Inc. for patent infringement in the U.S. District Court for the Northern District of Illinois on June 1, 2022.  *See Ingenus Pharma, LLC and Leiutis  Pharma LLP v. Nexus Pharma,*

---

[1] The subpoena is attached as Exhibit 1.

2

*Inc.,* Civil Action No. 1-22-cv-02868 (N.D. Ill. 2022).

Plaintiff's patent-in-suit (U.S. Patent No. 10,993,952, "'952 Patent") is directed to stable ready to use, liquid parenteral formulations of Cyclophosphamide and processes for the preparation thereof. Plaintiffs' Cyclophosphamide NDA Product is an injectable solution indicated for the treatment of malignant diseases such as malignant lymphomas (Hodgkin's disease, lymphocytic lymphoma, mixed-cell type lymphoma, histiocytic lymphoma, Burkitt's lymphoma); multiple myeloma, leukemias (chronic lymphocytic leukemia, chronic granulocytic leukemia, acute myelogenous and monocytic leukemia, acute lymphoblastic (stem-cell) leukemia); mycosis fungoides, neuroblastoma, adenocarcinoma of the ovary, retinoblastoma, and breast carcinoma.

Defendant has submitted ANDA No. 216783 to the FDA under 21 U.S.C. § 355(j) to obtain approval from the FDA to engage in the commercial manufacture, use, or sale of cyclophosphamide injection as a purported generic version of Plaintiffs' NDA Product prior to the expiration of the '952 Patent.

Defendants' ANDA contained a certification stating that Defendant's belief that Plaintiffs' '952 Patent was invalid or would not be infringed by the sale of Defendant's proposed Cyclophosphamide product. Defendant notified Plaintiffs about its ANDA filing, and Plaintiffs filed the present lawsuit in the Northern District of Illinois within forty-five days of Plaintiffs' receipt of that notice pursuant to 21 U.S.C. § 355(c)(3)(C).

Prior to the scheduling conference with the Court, Defendant advised that it would seek the deposition of Mr. Iyer and Dr. Bohnstedt, each of whom partially prosecuted the '952 Patent

in suit.[2]  Defendant represented that the attorney depositions were necessary because the attorneys were "the only sources to discover details regarding *conversations with the patent examiner that are not adequately described in the interview summaries*," and that "[t]he interviews are important because [the] *examiner's basis for allowing the patent-in-suit was the alleged unexpected result claimed by Plaintiff Leiutis*."[3]  Defendant never informed the Court that Mr. Iyer was litigation counsel to Plaintiffs in addition to his role as prosecution counsel, and the Court encouraged the Parties to negotiate limits on the patent prosecutor depositions.[4]

Defendant subsequently noticed a deposition under Federal Rule of Civil Procedure 30(b)(6) to Leiutis Pharmaceuticals, LLP on October 14, 2022[5].  The topics included (emphasis added): "6. The prosecution of the Patent-in-Suit including … *(iii) any interviews with the PTO; (iv) any declarations submitted by or on behalf of the Inventors,* " the very same subject matter upon which it seeks the deposition of Mr. Iyer.

Contemporaneous with its 30(b)(6) Notice to Leiutis, Defendant also issued notices of deposition to Dr. Adolph Bohnstedt and Chidambaram S. Iyer, who is litigation counsel for Plaintiffs Ingenus and Leiutis.[6]  In response, Plaintiffs filed objections to the 30(b)(6) Notice and

---

[2] *See* Report of the Parties Planning Meeting (D.I. 21), August 29, 2022, filed in *Ingenus Pharm's LLC. et al. v. Nexus Pharm's., Inc.*, No. 22-cv-02868 (MMR), attached as Exhibit 2.

[3] *Id.* at 7 (emphasis added).

[4] *See* Order of August 31, 2022 (D.I. 22) at p. 3, attached as Exhibit 3.

[5] The Notice is attached as Exhibit 4.

[6] The Iyer Notice is attached as Exhibit 5.

separately advised Defendant that notice of deposition to Mr. Iyer as a nonparty was improper.[7]

On January 6, 2023, Defendant provided a courtesy copy of a subpoena to Plaintiffs' counsel,

though Mr. Iyer was not served under Fed. R. Civ. P. 45(b)(1) and no Proof of Service was filed

under Fed. R. Civ. P. 45(b)(4).  The present motion is made without reference to or waiver of any

rights with respect to the failure of proper service.

On January 9, 2023, Plaintiffs' counsel objected to Mr. Iyer's subpoena on a number of

grounds, including the fact that Defendant made no threshold showing of the need to depose

opposing litigation counsel.[8]  Defendant responded on January 9, reiterating its position that Mr.

Iyer's deposition was necessary because "[t]he examiner interview summaries are missing

significant information regarding the specific materials discussed during the interviews."[9]

A deposition of Mr. Chandrashekhar Kocherlakota, both as corporate designee pursuant to

the 30(b)(6) notice and individually, was conducted on November 22, 2022.[10] Defendant now seeks

the opportunity to depose Plaintiff's litigation counsel, Mr. Chid Iyer on the ***same topics*** as it has

deposed Leiutis's corporate witness – patent prosecution and the examiner interviews.

However, Defendant's counsel had ample opportunity to obtain nonprivileged testimony

from Mr. Kocherlakota on the topic of the interviews that were conducted with the USPTO

---

[7] Letter of October 27, 2022, attached as Exhibit 6.

[8] Letter of January 9, attached as Exhibit 7.

[9] Correspondence of January 12, attached as Exhibit 8.

[10] The transcript of the deposition of Mr. Kocherlakota (including exhibits) is attached as Exhibit
   9.

examiner and the declaration evidence discussed during those interviews. And, consistent with USPTO practice and procedure, the discussions during the interviews between Mr. Iyer and the examiner were memorialized in written detail by the examiner in USPTO Interview Summary forms. There is no evidence or inference in the prosecution history of the application for the '952 Patent to the contrary. That is, consistent with the USPTO's own rule, the written prosecution history (available to the public on the USPTO website) is the complete record of the interactions between the applicant for the '952 Patent and the Office.[11] Attached as Exhibit 10 is a copy of the prosecution history of the application for the '952 Patent.

Thus, despite failing of its own accord to obtain all non-privileged testimony during the Rule 30(b)(6) deposition, the existence of the detailed Interview Summary forms prepared by the USPTO examiner memorializing the substance of the interviews during the prosecution of the '952 Patent, and Mr. Iyer's communications to the applicant being privileged, Defendant now seeks to subpoena Plaintiff's litigation counsel. Defendant's subpoena for Mr. Iyer's deposition testimony should be precluded because it is neither appropriate nor necessary

**III. Legal Standards**

Although parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense, courts have discretion to limit the scope of discovery when it is

---

[11] USPTO Manuel of Patent Examining Procedure ("MPEP") § 713.04 ("A complete written statement as to the substance of any in-person, video conference, electronic mail, telephone interview, or electronic message system discussion with regard to the merits of an application must be made of record in the application, whether or not an agreement with the examiner was reached at the interview.")

cumulative or can be obtained from other more convenient, less burdensome, or less expensive sources. Fed. R. Civ. P. 26(b)(l)-(2). The Court may also limit discovery "for good cause" and "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the discovery." Fed. R. Civ. P. 26(c)(1).

Depositions of opposing counsel are presumptively disallowed. *See* HANDBOOK FED. CIV. DISC. & DISCLOSURE § 1:78 (4th ed. July 2018 update) ("Litigation counsel are presumptively entitled to a protective order against being deposed by an adversary."); *Coleman v. D.C.*, 284 F.R.D. 16, 18 (D.D.C. 2012) ("Courts [] presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise."); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009) ("when seeking to depose opposing counsel, the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity."); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak C*o., 276 F.R.D. 376, 380 (D.D.C. 2011).

To overcome the presumption against deposing opposing counsel, the party seeking such a deposition must show "that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[12] *Guantanamera*, 263 F.R.D. at 8 (citations and quotation

---

[12] These factors were first articulated by the Eighth Circuit Court of Appeals in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986). While the Court of Appeals for the D.C. Circuit has not expressly adopted the *Shelton* test, a number of D.C. Courts have applied this test to bar requests to depose opposing counsel. *See, e.g., United States v. All Assets Held in Account Number 80020796,* 13-cv-1832 (JDB), 2019 U.S. Dist. LEXIS 805, 2019 WL 95605 at *4 (D.D.C. Jan. 3, 2019); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 263 F.R.D. 1, 9 (D.D.C. 2009);

marks omitted).  In most circumstances, the mere request to depose an opposing party's attorney constitutes the good cause required to obtain a Rule 26(c) protective order.  *See, e.g., S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) ("Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26 [] protective order") (internal citations omitted).

## IV. Argument

Under the foregoing legal standards, Defendant's subpoena for Mr. Iyer's deposition testimony should be precluded because it is neither appropriate nor necessary.  Mr. Iyer is litigation counsel to Plaintiffs and he is presumptively entitled to a protective order against being deposed by his client's adversary, Nexus.  *See Coleman*, 284 F.R.D. at 18; *Guantanamera*, 263 F.R.D. at 8; and *Sterne Kessler*, 276 F.R.D. at 380.  As recognized by courts, a deposition such as that requested by Nexus undermines attorney-client communications, presents unique opportunities for harassment, disrupts opposing counsel's preparation, may lead to opposing counsel's disqualification, and may spawn collateral litigation on issues of privilege, scope, and relevancy. *Coleman*, 284 F.R.D. at 18.

---

*Coleman v. District of Columbia,* 284 F.R.D. 16, 18 (D.D.C. 2012) ("When a party seeks to depose opposing counsel, the normally permissive discovery rules become substantially less so."); *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, No. 97-cv-1810, 1999 U.S. Dist. LEXIS 1072, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999).

### A. Nexus Had the Opportunity to Obtain Non-Privileged Information by Alternative Means, During the Rule 30(b)(6) Deposition

Defendant had the opportunity during the Rule 30(b)(6) deposition to elicit non-privileged information from Leiutis' corporate witness, Mr. Kocherlata. Perhaps dissatisfied with the record it created, it now seeks to obtain that information via a deposition of Plaintiff's litigation counsel. This is clearly improper, vexatious and inefficient, and should be rejected out of hand.

Plaintiffs received from Defendant a Notice Of Deposition Under Fed. R. Civ. P. 30(b)(6) to Leiutis Pharmaceuticals, LLP dated October 14, 2022. The Notice included 15 topics. Significantly, for purposes of the present motion, topic no. 6 stated as follows (emphasis added):

> 6. The prosecution of the Patent-in-Suit including (i) any rejection of claims during the prosecution; (ii) any amendments or responses submitted by or on behalf of the Inventors; *(iii) any interviews with the PTO; (iv) any declarations submitted by or on behalf of the Inventors;* and (v) any information disclosure statements submitted during prosecution.[13]

Plaintiffs served objections to Defendant's Rule 30(b)(6) Notice[14], and the deposition of Mr. Chandrashekhar Kocherlakota both as corporate designee and individually (Mr. Kocherlakota is an inventor of the '952 Patent along with Mr. Banda Nagaraju) was conducted on November 22, 2022.  Mr. Kocherlakota was designated to testify on a number of the 30(b)(6) topics noticed, including No. 6 above. (Ex. 9 pp. 31-34.)

---

[13] Exhibit 4, p. 5.

[14] A copy of Plaintiffs' Objections To Defendant's Rule 30(b)(6) Notice is attached as Exhibit 11.

During the course of the deposition conducted on November 22, 2022, Defendant's counsel had the opportunity to examine the witness both in his capacity as corporate designee and individually about the USPTO examiner interviews and the declarations submitted by or on behalf of the inventors, as an alternative to deposing Mr Iyer as a means for obtaining the requested information. *Guantanamera*, 263 F.R.D. at 8.  In fact, Defendant's counsel did just that as can be appreciated from the following exchanges between Defendant's counsel, the witness Mr. Kocherlakota and Plaintiff's counsel Mr. Iyer. While Plaintiff's attorney, Mr. Iyer, correctly objected on the basis of privilege, he instructed the witness to answer by indicating "you can answer if you know." The two below noted portions of the transcript of the deposition of Mr. Kocherlakota are just two examples of this type of exchange between Defendant's counsel, the witness and Plaintiff's counsel. They occur on pages 222 and 224 of the transcript (Exhibit 9), respectively.

> Q Page No. 1, Paragraph 8, you state that:  In support of the non-obviousness of the invention claimed in the above application, I submit herewith data obtained under my direct supervision evidencing that the formulation by the claims as amended in the response to the office action of September 15, 2020 possess unexpected advantages over the formulations disclosed in US2015/0320775 and US 4879286. Do you see that?
>
> A Yeah, I see that.
>
> Q Okay. So -- okay. Now, you considered certain prior art formulations? You -- you compared prior art formulations to the claimed formulation and compared their stability. Is that correct?
>
> MR. IYER: Objection. ***Without revealing attorney-client privileged information, you may answer generally***.
>
> THE WITNESS: Yeah, in those altered states that, you know, we have a, you know, prior art formulation data and, you know, our formulation is there.
>
> …
>
> Q How did you select these particular [prior art reference] formulations and [prior art reference] formulations?
>
> MR. IYER: Objection; attorney-client privilege. ***You can answer generally***

*if you know*.

        THE WITNESS: Well, these are there in the specifications, Sal.

It is clear from Mr. Kocherlakota's deposition that alternative means existed to obtaining information about Topic 6 (other than deposing Mr. Iyer), and Defendant's counsel had the opportunity to, *and did*, elicit non-privileged testimony about the declarations submitted during prosecution. Glaringly, Defendant's counsel asked Mr. Kocherlakota no substantive questions about any of the examiner interviews, though he could have done so.[15] Failing to have elicited additional non-privileged testimony, it is clear that Defendant seeks the deposition of Plaintiff's litigation counsel.

Defendant's missed opportunity to ask follow-up questions during the deposition should not be a basis to attempt to do so via a deposition of Plaintiff's litigation counsel, Mr. Iyer. That second chance is also inappropriate for the reasons discussed below. Namely, Mr. Iyer's communications with the examiner are recorded in the Examiner Interview Summary forms, and Mr. Iyer's communications with the applicant during the prosecution of the '952 Patent are privileged. There is simply no non-privileged testimony available beyond that which Defendant's counsel obtained in the Rule 30(b)(6) deposition.

## B. Other Means Exist to Obtain the Nonprivileged Information Sought

To the extent Nexus seeks non-privileged discovery about Mr. Iyer's communications with the examiner during the interviews and regarding the declarations, Nexus has means to do so other than deposing Mr. Iyer.

---

[15] Defense counsel asked a single question related to whether Mr. Kocherlata *participated* in any of the examiner interviews (Exhibit 9, pp. 246, ll. 3-5), but did not ask anything further.

*First*, Nexus has deposed Leiutis' corporate witness on the same subject matter. *Second*, The USPTO examiner made of record two detailed written summaries of the interviews Plaintiffs' counsel, Mr. Iyer, conducted with her. The written summaries (called an "Applicant Initiated Interview Summary" by the USPTO) are public and per USPTO procedure and practice are the complete summary of the points discussed during the interview.[16] Further, as was done here, to the extent that an applicant provides to the examiner an agenda prior to the interview for discussion during the interview, that agenda which may contain a draft proposal for discussion, is also made of record as an attachment to the Applicant Initiated Interview Summary. The proposed agenda and any claims, arguments or data are not generally considered exhibits or demonstratives but rather points that can be discussed during the interview. Clearly, the detailed USPTO record of the prosecution of the '952 Patent provides Defendant with the non-privileged information that they seek.

The detailed nature of the Interview Summaries which demonstrates that the non-privileged information is readily available to Defendant, can be appreciated from the following.

Mr. Iyer participated in a first interview that was conducted January 5, 2021. The examiner memorialized all of the topics which were discussed during the interview in a clear and detailed manner, even paraphrasing Mr. Iyer's arguments ("Attorney Iyer indicated … ") via an Applicant

---

[16] MPEP § 713.04 ("A complete written statement as to the substance of any in-person, video conference, electronic mail, telephone interview, or electronic message system discussion with regard to the merits of an application must be made of record in the application, whether or not an agreement with the examiner was reached at the interview.")

Initiated Interview Summary form dated January 8, 2021.[17] Namely, in providing a complete record of the interview, she indicated that:

- Mr. Iyer provided a new draft set of narrower claims and "a number of slides (attached [with the] interview summary) focusing on a comparison between the instant composition and compositions disclosed in the prior art . . . ."

- Mr. Iyer "argued, using data that had been previously presented in Declarations submitted on 04/21/2020 and on 10/07/2019, that superior results/stability are achieved with the instant compositions over the prior art."

- In providing accompanying detailed reasoning, that the examiner found Mr. Iyer's arguments unpersuasive at the time because "there is no support in the Specification for most of the concentrations and ranges . . .  For example, the upper limit 25% cyclophosphamide in the newly presented claims does not find support in the Specification."

- The examiner also took issue with one of the slides prepared by Mr. Iyer because it may not be supported by an earlier-filed declaration.

- The next steps to be taken by the examiner and Mr. Iyer ("a clear record is needed, in which a side by side comparison be provided between the instant compositions and the compositions taught by the prior art. Applicant is invited to clarify the record, write claims that contain no new matter, and explain where each

---

[17] Exhibit 10, pp. 95-97.

concentration/range finds support in the Specification. Attorney Iyer will consult with Applicant regarding a Response and new/amended claims. The examiner will call Attorney Iyer prior to issuing a new office action in the case.").

Defendant's counsel has not pointed to anything in the interview summary or the prosecution history as a whole that is evidence or even an inference of a deficiency in the USPTO record such that would be a justification for a deposition of Mr. Iyer as to his communications with the examiner.

Mr. Iyer conducted a second interview of the examiner on March 22, 2021. The examiner again memorialized all of the topics which were discussed during the interview in a clear and detailed manner via an Applicant Initiated Interview Summary form dated March 29, 2021.[18] This time she indicated the following:

> Examiner Neagu and Attorney Iyer discussed the amendment to the claims submitted on 15 January 2021. The examiner indicated that some of the ranges in new claims 46, 47, 48, 50 and 51, submitted on 15 January 2021, do not find support in the Specification as filed.
> The examiner pointed to the 6 specific Examples disclosed in the Specification as filed, and to the concentrations (% w/w) corresponding to each of the Examples (see calculated concentrations in Table, page 5, Applicant's Response of 1 March 2019).
> Specifically, the examiner noted that the ethanol concentration range of 69.5% to 76.5%; the polyethylene glycol concentration range 3.25% to 8.85%; the propylene glycol concentration range 3.25% to 8.85% in claim 46; the concentrations in claims 47, 48; the concentration 0.007% monothioglycerol in claim 50; and the concentrations recited in claim 51 do not find support in the Specification/original disclosure, and would constitute new matter.
> The examiner and Attorney Iyer discussed amending the claims so that the concentrations/ranges of concentrations recited by the claims find support in the Specification/disclosure.
> Attorney Iyer to submit on March 23, 2021, a Supplemental amendment to

---

[18] Exhibit 10, p. 26.

the claims, upon consultation with client.

Thus, the examiner again provided a detailed Interview Summary for the follow-on interview conducted March 22, 2021. Defendant's counsel has not pointed to anything in this interview summary that evidences or suggests even an inference of a deficiency in the USPTO record such that there is justification for a deposition of Mr. Iyer.

Because Nexus can obtain all of the information about Mr. Iyer's January 5 and March 22, 2021 interviews of the examiner from the USPTO record of the prosecution of the '952 Patent, and there is no evidence that the USPTO did not follow its own rule to make the whole interview of record, Nexus should not be permitted to depose him. Therefore, Nexus' subpoena for Mr. Iyer's testimony should be quashed entirely.

### C. The Information Sought is Privileged

A deposition of Plaintiffs' counsel, Mr. Iyer, would not achieve its intended purpose or desired outcome because communications between Mr. Iyer and the applicant in connection with the two interviews of the examiner are privileged.  While the substance of the discussion between Mr. Iyer and the patent examiner is not privileged (and can be obtained from the written patent office records as well as Leiutis witnesses), Mr. Iyer's discussion with his client regarding the strategy and substance of those interviews is subject to the attorney-client privilege, and not discoverable through Mr. Iyer's deposition.

### D.  The Information Sought is Not Crucial to the Preparation of Nexus' Case

Nexus has failed to provide a list of deposition topics for Mr. Iyer. It therefore cannot establish that his testimony is crucial to the preparation of its case.  To the contrary, an open-ended

deposition of opposing counsel, demanded on the basis of unfounded allegations about conversations with the examiner not of record in the USPTO prosecution history (an allegation inconsistent with well settled USPTO practice and procedure), is little more than a fishing expedition in search of a narrative that is not legally recognized. *Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1374 (Fed. Cir. 2001).

To the extent Nexus seeks to depose Mr. Iyer regarding the substance of the interviews with the patent examiner because the" examiner's basis for allowing the patent-in-suit was the alleged unexpected result claimed by Plaintiff Leiutis" (Ex. 2 at 7), Nexus' request should be denied because Mr. Iyer's testimony has no bearing on the issue. The full record of those interviews was recorded by the patent examiner and made of record in the prosecution history.  The Patent Office's Rules allow patentability decisions to be based **only** on the written record. 37 C.F.R. § 1.2 ("***The action of the Patent and Trademark Office will be based exclusively on the written record in the Office.***")(emphasis added);  MPEP § 713.04. And the Patent Office is presumed to follow its own rules. *Rite-Hite Corp. v. Kelley Co*., 819 F.2d 1120, 1122-1123 (Fed. Cir. 1987)("[Defendant] Kelley has provided neither evidence nor inference to overcome the presumption that the PTO complied with its own rules."); 37 C.F.R.§ 1.133(b). To the extent Nexus seeks to determine the basis on which the examiner allowed the claims of the '932 patent issue, the written patent office record provides the *exclusive* basis. 37 C.F.R. § 1.2 .

Even where the patent applicant provides a draft of the interview summary under 37 C.F.R.§ 1.133(b), the examiner must ensure that the patent owner's statement of substance of the interview is accurate, M.P.E.P § 713.04; here, the examiner has not objected to the content of

Leiutis' statement of substance of any interview. Also, the examiner's interview summary contains the detailed notes of the conversation between the applicant's representative and the examiner. Finally, the interview was followed by Leiutis's written response to the Office Action, and it was this submission to the Office that constituted Leiutis's official, formal response to the rejections raised by the Office during prosecution. 37 C.F.R.§ 1.133(b)

Even assuming *arguendo* that Mr. Iyer said something at an interview that was ***not*** recorded in the examiners detailed summary, it could not by Rule have formed the basis of any patentability decisions - the very topic on which Defendant seeks Mr. Iyer's deposition. *Id.* Because any statements not recorded in the examiner interview summary record did not form the basis of the Office's patentability determination, they cannot be crucial to the preparation of defendant's case. *See PureChoice, Inc. v. Honeywell Int'l, Inc.*, 2008 U.S. Dist. LEXIS 4246 (E.D. Tex. Jan. 22, 2008)(oral statements to the patent office are not part of the intrinsic evidence for the patent).

## V.     Plaintiffs are Entitled to its Reasonable Expenses, Including Attorney's Fees

Fed. R. Civ. P. 26(c)(3) provides that motions seeking a protective order from discovery include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court faction.  Plaintiffs certify that they advised Defendant of the impropriety of the subpoena to Mr. Iyer in a letter of January 9, 2023,[12] for largely the same reasons set forth in this motion.  Defendant responded in a January 12, 2023

---

[19]  Attached as Exhibit 7.

email[20], refusing to withdraw the subpoena.  Plaintiffs met and conferred on January 17 and 26, 2023, but were unable to resolve the disputes over Mr. Iyer's deposition. Defendant's refusal necessitated the instant motion.

Fed. R. Civ. P. 26(c)(3) states that "Rule 37(a)(5) applies to the award of expenses" for motions for a Protective Order.  Rule 37(a)(5)(A) provides that if the motion is granted, the court "must" order payment of "the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless one of the three specified exceptions applies.  See Fed R. Civ. P. 37(a)(5)(A)(i)-(iii). Here, no exception applies.  First, movant did confer in good faith to attempt to resolve this dispute.  Rule 37(a)(5)(A)(i).  Defendant's service of this deposition subpoena was plainly not "substantially justified" under the case law.  Rule 37(a)(5)(A)(ii).  Plaintiff's January 9th letter specifically notified Defendant that there was no legal basis for this deposition, and requested its withdrawal.  Given the overwhelming authority prohibiting fishing expeditions of opposing counsel, Defendant either simply failed to consider the legal issues, despite notice, or proceeded with full knowledge that the subpoena was improper.

Plain and simple, this subpoena is abusive, harassing, and without purpose other than to disrupt the litigation process and to drive up litigation costs.  As such, the circumstances make an award of expenses just.  Rule 37(a)(5)(A)(iii).

### VI. Conclusion

For the foregoing reasons, it is respectfully requested that this Court quash the deposition

---

[20] Attached as Exhibit 8.

18

subpoena of Mr. Chid Iyer and issue a protective order precluding Defendant from seeking

further discovery from him.


Date: January 26, 2022

Respectfully submitted

SUGHRUE MION, PLLC
Raja N. Saliba (DC Bar #465832)
2000 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060
rsaliba@sughrue.com

*Counsel for Chidambaram S. Iyer, Esq.*

19