UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHIDAMBARAM S. IYER, ESQ., ) | |
| ) | Case No. 23-mc-8 (CKK/GMH) |
| Petitioner, ) | |
| ) | |
| v. ) | *Ingenus Pharms., LLC v. Nexus* |
| ) | *Pharms, Inc.*, Case No. 22-cv-2868 |
| NEXUS PHARMACEUTICALS, INC., ) | (Related case pending in the U.S. |
| ) | District Court for the Northern |
| Respondent. ) | District of Illinois) |
| ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Chidambaram S. Iyer, a lawyer who helped to prosecute a patent for a chemotherapy drug that is the subject of an infringement action in the Northern District of Illinois styled *Ingenus Pharmaceuticals, LLC v. Nexus Pharmaceuticals, Inc.* ("*Ingenus*"), has moved to quash a deposition subpoena issued to him by the defendant in that matter, Nexus Pharmaceuticals, Inc. ("Nexus"), on the basis that he now serves as trial counsel for the patent owner in the infringement case. ECF No. 1. Nexus asks the Court to transfer the motion to quash to the Northern District of Illinois for resolution or, in the alternative, to deny the motion to quash and compel the deposition. ECF No. 4. For the reasons that follow, Nexus' request to transfer the motion to quash is granted.

### I.   BACKGROUND

#### A.   Prosecution of the '952 Patent and FDA Applications

The plaintiffs in the underlying *Ingenus* case—Ingenus Pharmaceuticals, LLC ("Ingenus") and Leiutis Pharmaceuticals, LLP (Leiutis")— are owners and assignees of a patent (known as the '952 patent) "relat[ing] to stable ready to use, liquid parenteral formulations of Cyclophosphamide solution for intravenous use in the treatment of various cancers and process and preparation

thereof." Exh. to Complaint at 2, *Ingenus*, No. 22-cv-2868 (N.D. Ill. June 1, 2022) (the '952 patent document), ECF No. 1-1; *see* Complaint at 5, *Ingenus*, No. 22-cv-2868 (N.D. Ill. June 1, 2022), ECF No. 1. Chandrashekhar Kocherlakota and Nagaraju Banda, the inventors of what became the '952 patent, applied for patent protection in August 2017. ECF No. 1-10 at 424. The application went through a number of iterations over the course of the next approximately three-and-one-half years until the U.S. Patent and Trademark Office ("PTO") issued the patent in May 2021. *See* ECF No. 1-10 at 34; *see also* Exh. to Complaint, *Ingenus Pharm.*, No. 22-cv-2868, ECF No. 1-1. Two individuals helped shepherd the application through its prosecution, including participating in six interviews with the patent examiner to explain why the patent was non-obvious—Adolph Bohnstedt, a non-attorney patent agent who took part in four interviews between October 2019 and September 2020; and Iyer, a patent attorney who replaced Bohnstedt in December 2020 and participated in the remaining two interviews in January and March 2021, soon after which the examiner provided notice that the patent would be allowed. *See* ECF No. 1-10 at 2–3 (noting the acceptance of a power of attorney filed on Dec. 11, 2020), 15–26 (Notice of Allowance dated March 29, 2021, and related documents); 27–28 (summary of Mar. 22, 2021 interview between patent examiner and Iyer); 96–98 (summary of Jan. 5, 2021 interview between patent examiner and Iyer); 118–19 (summary of Sept. 8, 2020 interview between patent examiner and Bohnstedt); 165–67 (summary of Apr. 6, 2020 interview between patent examiner and Bohnstedt); 201-02 (summary of Dec. 19, 2019 interview between patent examiner and Bohnstedt); 210–12 (summary of Oct. 4, 2019 interview between patent examiner and Bohnstedt); *see also* ECF No. 1-2 at 7. In connection with those interviews, Bohnstedt and Iyer submitted to the PTO a number of affidavits from inventors Kocherlakota and Banda. *See* ECF No. 1-10 at 77–81 (declaration of Kocherlakota dated Jan. 14, 2021); 139–43 (declaration of Banda dated Apr. 8, 2020); 144–48 (declaration of

Kocherlakota dated Apr. 8, 2020); 223–30 (declaration of Banda dated Oct. 1, 2019); 231–38 (declaration of Kocherlakota dated Oct. 1, 2019).

The patent examiner ultimately found that the invention now protected by the '952 patent had better stability compared to the formulations in the prior art and that the stability was "unexpected."[1] ECF No, 1-10 at 25. Consequently, the patent's four remaining claims were allowed and the patent issued in May 2021. *See* ECF No. 1-10 at 19–26; *see also* Exh. to Complaint at 1, 5, *Ingenus*, No. 22-cv-2868.

Prior to issuance of the '952 patent, Ingenus and Leiutis filed a New Drug Application ("NDA") for its injectable cyclophosphamide solution for use in cancer treatment, which was approved by the Food and Drug Administration ("FDA") in July 2021; an NDA regarding a supplemental dosage was approved in November 2021. Complaint at 4–5, *Ingenus*, No. 22-cv-2868. Later, in December 2021, Nexus filed an Abbreviated New Drug Application ("ANDA") to obtain approval for the manufacture, use, or sale of purported generic versions of the Ingenus product prior to the expiration of the '952 patent.[2] *Id.* at 6; *see also* ECF No. 5 at 24. The ANDA included a so-called "paragraph IV certification" that the '952 patent is invalid or will not be

---

[1] An invention is not patentable "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. "Unexpected results" can be "probative of nonobviousness." *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 739 (Fed. Cir. 2013).

[2] The Food, Drug, and Cosmetic Act requires a company that seeks to market a new brand-name drug to submit an NDA that includes "among other things, evidence of the drugs' safety and effectiveness, as well as information about patents that cover or might cover the drugs." *Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 879 (D.C. Cir. 2004). The so-called "Hatch-Waxman" amendments to that statute allow companies seeking to sell generic versions of approved brand-name drugs to submit ANDAs "that 'piggyback' on the safety-and-effectiveness information that the brand-name manufacturers submitted in their NDAs." *Id.* To address the patents that cover or might cover the generic drugs, companies can "include[e] in their ANDAs one of several 'certifications' that explain why the FDA should approve the application despite the patent's claim on the drug." *Id.* Among these is a certification that the patent is invalid or will not be infringed by the new drug. *Id.* Once an ANDA applicant provides notice to a patent holder of its application, the FDA must wait 45 days before approving the ANDA, "thereby giving the patent holder that much time to file a patent-infringement suit." *Id.*

infringed by the new drug. *See* Complaint at 6, *Ingenus*, No. 22-cv-2868; *see also Purepac Pharm.*, 354 F.3d at 879 ("[A] 'paragraph IV certification,' named for the subsection of the law that describes it[,] states 'that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug.'" (quoting 35 U.S.C. § 355(j)(2)(A)(vii)(IV)). In light of Nexus' ANDA and paragraph IV certification, Ingenus and Leiutis filed their patent infringement suit in the Northern District of Illinois in June 2022, which was assigned to District Judge Mary M. Rowland. Complaint, *Ingenus*, No. 21-cv-2868.

### B.    Procedural Histories of *Ingenus* and This Action

Nexus timely filed its Answer and a counterclaim in the Illinois action seeking a declaration that Nexus' proposed ANDA product did not infringe any valid claim of the '952 patent. Answer at 18–23, *Ingenus*, 22-cv-2868 (N.D. Ill. July, 25, 2022), ECF No. 15. The parties' August 29, 2022 report of their Rule 26(f) conference in the Illinois action noted that Iyer was among the attorneys who participated in the conference on Ingenus' behalf. ECF No. 1-2 at 2. That report also disclosed that Nexus sought permission to depose Iyer and Bohnstedt, a request that Ingenus opposed, and "request[ed] guidance from the Court as to how the parties should proceed in in connection with [that] issue." *Id.* at 8–9. In her scheduling order of August 31, 2022, Judge Rowland stated that she was

> inclined to allow Defendant limited depositions of patent prosecutors Adolph Bohnstedt and Chidambaram Iyer.  The Court is not aware of authority categorically barring such depositions. . . .  [H]owever, the parties shall meet and confer further on this issue to attempt to reach agreement on limited video depositions of these individuals. If the parties cannot resolve the issue, they should include further specifics in their October 31 status report and the Court will rule thereafter.

ECF No. 1-3 at 4. Pursuant to the Local Patent Rules of the Northern District of Illinois, that order also set a schedule for infringement, non-infringement, unenforceability, and invalidity

4

contentions and claim construction briefing; it further set April 24, 2023, as the deadline for pre-claim construction fact discovery. ECF No. 1-3 at 2; *see generally* Local Patent Rules, https://www.ilnd.uscourts.gov/_assets/_documents/_rules/localpatentrules-preamble.pdf (last visited Apr. 21, 2023) [hereinafter, N.D. Ill. Patent Rules]. That deadline was later extended to May 31, 2023. Minute Entry, *Ingenus*, No. 22-cv-2868 (N.D. Ill. Apr. 20, 2023).

In September 2022, Nexus served notices on counsel for Ingenus and Leiutis setting the depositions of Iyer and Bohnstedt for December 1, 2022, and December 2, 2022, respectively. ECF Nos. 1-5, 5-5. Ingenus and Leiutis objected, stating first that any depositions should have been noticed by a Rule 45 subpoena, since neither individual is a party to the Illinois case. ECF No. 1-6 at 2. They further charged that "noticing [Iyer's] deposition under the guise of fact discovery seem[ed] little more than a harassment tactic designed to create a witness out of trial counsel." *Id.* They also contended that (1) testimony relating to Iyer's and Bohnstedt's representation before the PTO was irrelevant given that the PTO's rules require patentability decisions to be made only on the written record before that office, and (2) questions about the positions taken before the PTO would be "more properly directed to the applicants who made them, not the attorneys who represented them." *Id.* at 2–3.

Judge Rowland vacated the status report due on October 31, 2022 and set a status conference for November 21, 2022. Minute Entry, *Ingenus*, No. 22-cv-2868 (N.D. Ill. Oct. 12, 2022), ECF No. 26. The parties filed a status report in advance of that hearing, asserting that they had not yet resolved the issue concerning the depositions of Iyer and Bohnstedt. ECF No. 5-1 at 2. That status report also noted that the parties had resolved an issue about the location of the Rule 30(b)(6) deposition of Leiutis. *See id.* That deposition took place virtually on November 22, 2022;

5

Kocherlakota, one of the inventors, was the deponent and Iyer defended the deposition. *See* ECF No. 1-9 at 3–5.

In early January 2023, Iyer's law firm was served with a subpoena from the Northern District of Illinois requiring Iyer to appear for a deposition in this District, which is where he is employed.[3] ECF No. 1-1; ECF No. 4 at 9 & n.3; ECF No. 4-2 at 2. On January 26, 2023, Iyer filed a motion to quash the subpoena in this Court pursuant to Rule 45(d)(3)(A), which provides that "the court for the district where compliance is required must quash or modify a subpoena that subjects a person to an undue burden or calls for disclosure of privileged information," among other things. *See* ECF No. 1; *see also* Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). This Court issued an order calling for a response from Nexus that also reminded the parties that Nexus could consent to the transfer of the motion to quash to the Northern District of Illinois under Rule 45(f), which allows such a transfer upon consent or if the court where compliance is required finds "exceptional circumstances." ECF No. 3. A joint status report filed in *Ingenus* on the same day that this Court issued its scheduling order noted that Iyer did not consent to transfer to that court and indicated that Nexus would file a motion there to compel his deposition. Joint Status Report at 2, *Ingenus*, No. 21-cv-2868 (N.D. Ill. Jan. 31, 2023), ECF No. 31. Nexus filed its motion a few days later and Judge Rowland denied it soon thereafter without further briefing. *See* Motion to Compel the Deposition Testimony of Chidabaram Iyer, *Ingenus*, 22-cv-2868 (N.D. Ill. Feb. 3, 2023), ECF No. 32; ECF No. 5-4 at 2. Judge Rowland held that the proper forum for a motion to compel compliance with a subpoena is the district where compliance is required unless the court in that

---

[3] Nexus admits that the subpoena was not personally served upon Iyer, in violation of Rule 45. *See* Joint Status Report at 1, *Ingenus Pharm.*, No. 21-cv-2868 (N.D. Ill. Jan. 31, 2023), ECF No. 31; *Henderson v. Day*, No. 19-cv-945, 2021 WL 1978793, at *2 (D.D.C. May 17, 2021) (noting that this Circuit requires the target of a subpoena to be personally served). Although Iyer does not challenge the subpoena on the basis of improper service in his motion to quash, he asserts that he has made his motion "without reference to or waiver of any rights with respect to the failure of proper service." ECF No. 1 at 5; *see also Alexander v. FBI*, 186 F.R.D. 128, 130 (D.D.C. 1998) (holding that objections to proper service can be waived or forfeited).

6

district transfers the dispute to the district that issued the subpoena. ECF No. 5-4 at 2. As that had not happened here, she denied the motion without prejudice. *Id.*

Briefing on the motion to quash proceeded in this Court, with Nexus filing an opposition that also argued that exceptional circumstances existed to transfer the motion to the Northern District of Illinois. ECF No. 4 at 4. In his reply brief, filed on February 21, 2023, Iyer opposed the transfer request and further argued, among other things, that Nexus had served the deposition subpoena to gain discovery on "an inequitable conduct defense that does not exist" and that he was not the proper individual to testify on the bulk of the topics proposed. ECF No. 5 at 3, 21–22.

February 21, 2023, was also the deadline for parties to amend the pleadings in *Ingenus*. *See* ECF No. 4-1 at 5 (setting Feb. 20, 2023 as the "deadline for the parties to Amend the Pleadings or Add Parties"); Motion for Leave to Amend Counterclaims at 1, *Ingenus*, No. 22-cv-2868 (N.D. Ill. Feb. 21, 2023), ECF No. 39 (noting that, because Feb. 20, 2023, was a federal holiday, the deadline for amendment of pleadings was Feb. 21, 2023, pursuant to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure). Nexus duly filed a motion to amend its answer to include, for the first time, a counterclaim alleging that Leiutis engaged in inequitable conduct before the PTO; Judge Rowland granted that motion. Minute Entry, *Ingenus*, No. 22-cv-2868 ((N.D. Ill. Feb. 22, 2023), ECF No. 40; Amended Counterclaims at 5–18, *Ingenus*, No. 22-cv-2868 (N.D. Ill. Feb. 22, 2023), ECF No. 41.

Recognizing that the interposition of an inequitable conduct counterclaim changed the complexion of both Iyer's motion to quash and Nexus' request to transfer, this Court set a motion hearing "to allow counsel to address th[e] new developments." ECF No. 6 at 4. Specifically, the Court noted that "[t]here is significant authority indicating that the pleading of an inequitable conduct defense or counterclaim counsels against quashing a deposition subpoena served on an

7

attorney who prosecuted a patent, even if he is trial counsel in the infringement case involving that same patent." *Id.* at 2–3 (collecting cases). More, because the inequitable conduct claim "is material to the question of whether the deposition subpoena served on Mr. Iyer should be quashed, a challenge by Ingenus and [Leiutis] . . . to the pleading of that claim, if granted by the Northern District of Illinois court, might well affect the resolution of the motion to quash." *Id.* at 3.

On March 24, 2023, Ingenus and Leiutis filed an answer to the amended counterclaims. *See* Plaintiffs' Answer to Nexus Pharmaceuticals, Inc.'s First Amended Counterclaims, *Ingenus*, No. 22-cv-2868 (N.D. Ill. Mar. 24, 2023), ECF No. 42. At that point, the stage seemed set for resolution of this dispute: the inequitable conduct counterclaim would go forward in Ingenus and this Court could rule on the requests before it on the record as it stood. However, days before the hearing on Iyer's motion to quash and Nexus' request to transfer, Ingenus and Leiutis challenged the inequitable conduct claim in the Ingenus case via a motion for judgment on the pleadings. *See* Plaintiffs' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), *Ingenus*, No. 22-cv-2868 (N.D. Ill. Apr. 10, 2023), ECF No. 43. That motion argues that none of the "four alleged instances of misrepresentation" Nexus offers in support of its inequitable conduct claim— that (1) the first declarations submitted to the PTO "compar[ed] a formulation that was not even disclosed in their application to allegedly show unexpected results over selected examples from the prior art"; (2) "the second inventor declarations [] improperly used data from compositions outside the claimed ranges to show unexpected results"; (3) "the applicant was improperly claiming a broader range than that described in the patent application"; and (4) the third round of inventors' declarations did not compare the claimed invention to the closest prior art as is required to show unexpected results," *id.* at 5 (alterations in original) (quoting the counterclaims)—is

8

actually a misrepresentation, so "Nexus cannot meet the threshold showing" for such a claim, let alone the further requirements of materiality and intent to deceive the PTO. *Id.* at 1–2, 5.

The Court held a hearing on April 14, 2023, at which the parties addressed both the motion to quash and the request to transfer.[4] The discussion below focuses on the transfer request, leaving the merits of the motion to quash to Judge Rowland in the Northern District of Illinois.

## II. DISCUSSION

Motions to quash a subpoena are to be filed, in the first instance, in the jurisdiction where compliance is required. Fed. R. Civ. P. 45(d)(3)(A). However, Rule 45(f) allows transfer of subpoena-related motions to the issuing court upon consent of the target or if the court where the motion is filed finds "exceptional circumstances." The proponent of a transfer has the burden of establishing such circumstances. Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. According to the advisory committee,

> [t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issue is likely to arise in discovery in many districts.

*Id.* "Th[at] list is not exhaustive," *Dr. Muhammad Mirza & Allied Med. & Diagnostic Servs., LLC v. Yelp, Inc.*, No. 21-mc-80077, 2021 WL 2939922, at *2 (N.D. Cal. July 13, 2021), and, "[a]mong other elements, courts determining whether 'exceptional circumstances' exist to warrant transfer have considered '[case] complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation,'"

---

[4] As of the time that this Memorandum Opinion and Order issued, the transcript of the April 14, 2023 hearing had not been posted on ECF. However, the undersigned was provided a copy of that transcript and cites the page numbers therein.

9

*In re UBS Fin. Servs., Inc. of P.R. Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) (second alteration in original) (quoting *Jud. Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). Thus, in analyzing a request to transfer a subpoena-related motion to the issuing court, the court where compliance is required should engage in a "balancing test," considering "on one hand . . . the burden on the party responding to the subpoena in the event of a transfer, and on the other hand . . . factors such as judicial economy, docket management, and the risk of inconsistent rulings." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 16-cv-61, 2016 WL 593546, at *3 (D. Nev. Feb. 12, 2016).

Respondent argues that an undue burden would be placed on him if he were to be required to litigate the motion to quash in the Northern District of Illinois. He points out that he neither lives nor works in that district, that he is not a member of the bar of that court, and that "all of the areas of inquiry about which [he] would be questioned took place in this judicial district." ECF No. 5 at 15. He further complains that he should not be required "to take additional steps in a foreign jurisdiction for the benefit of [Nexus]." Id. at 16. However, the Court finds the burden of transfer on Respondent is slight.

For all his protestations, Iyer is no stranger to the Northern District of Illinois. Indeed, his primary argument opposing enforcement of the subpoena is that he is litigation counsel in the *Ingenus* case in that court and "[l]itigation counsel are presumptively entitled to a protective order against being deposed by an adversary." ECF No. 1 at 2; *see also, e.g., id.* ("Chidambaram 'Chid' S. Iyer, Esq. of Sughrue Mion, . . . , litigation counsel to Ingenus Pharmaceuticals, LLC, and Leiutis Pharmaceuticals LLP . . . , moves this Court for an Order quashing a deposition subpoena served on him by Nexus Pharmaceuticals, Inc. . . ."); *id.* at 4 (identifying Iyer as "litigation counsel" for the plaintiffs in Ingenus), 5 (same), 6 (same), 8 (same), 9 (same), 11 (same); ECF No.

1-6 at 2 (same); ECF No. 1-7 at 2 (same); ECF No. 1-8 at 2 (same); *see also* Transcript of Apr. 14, 2023 Hearing [hereinafter, "Hearing Tr."] at 38. He has actively participated in that litigation, taking part in the Rule 26(f) conference and defending the Rule 30(b)(6) deposition of Leiutis. *See* ECF No. 1-2 at 2; ECF No. 1-9 at 3–5; Hearing Tr. at 39. More, the firm with which he is a partner—Sughrue Mion—which is representing him with respect to this subpoena, is also responsible, through Iyer, for the competent representation of Ingenus in Illinois. Courts have discounted the burden that a transfer to the issuing court will work in similar circumstances. For example, in *Lipman v. Antoon*, the plaintiff in a case filed in the Western District of Arkansas served a non-party subpoena on an attorney who was a partner at the firm that represented the defendant in the Arkansas case. 284 F. Supp. 3d 8, 8–9 (D.D.C. 2018). The attorney filed a motion to quash and the plaintiff sought to transfer the motion to the issuing court. *See id.* at 10. The court rejected the attorney's argument that he would be burdened by the transfer because "he and his attorney [were] based in the District of Columbia" and should not have to litigate in a jurisdiction to which they had no connection. *Id.* at 11. Rather, it found the burden "negligible" because the attorney was "represented by his own firm," which also was involved in the underlying litigation. *Id.* "In [that] circumstance, 'the general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes is significantly reduced' because [the subpoena target is] represented by a firm familiar with th[e] [underlying] litigation and the issuing court." (quoting *Judicial Watch*, 307 F.R.D. at 35); *see also, e.g.*, *Alberi v. Aerojet Rocketdyne, Inc.*, No. 22-mc-90, 2022 WL 1321373, at *3 (S.D.N.Y. May 3, 2022) ("Th[e] potential burden is especially minimal in light of the fact that [the target's] counsel, Condon & Forsyth, represents defendants in the underlying action."); *CFA Inst. v. Am. Soc'y of Pension Prof'ls & Actuaries*, Nos. 20-mc-19, 20-mc-19, 2020 WL 1695050, at *2 (D.D.C. Apr. 7, 2020) ("[R]esolution of this

11

[subpoena] dispute in the [issuing court] will impose an insignificant burden on [the individuals subject to the subpoena], who are represented by the same Washington, D.C. law firm that has been representing Defendants in the underlying case."); *In re Braden*, 344 F. Supp. 3d 83, 95 (D.D.C. 2018) (following *Lipman*); *cf. Google, Inc. v. Digital Citizens Alliance*, No. 15-mc-707, 2015 WL 4930979, at *5 (D.D.C. July 31, 2015) (discounting the alleged burden on a small entity comprising three employees in the District of Columbia of litigating a motion to compel compliance with a subpoena in the Southern District of Mississippi where the entity was involved in the litigation in Mississippi). Here, not only is Iyer represented by a firm that also represents the plaintiff in the underlying litigation in Illinois, *he himself* is an attorney for that party.

The import of the fact that Iyer himself is not admitted to practice in the Northern District of Illinois is minimal. Iyer says nothing about whether the attorneys representing him in this action are admitted there, and his firm advertises itself as "an international firm in every sense of the word," boasting that it has "successfully litigated IP disputes in every popular forum, including U.S. District Courts across the country." Sughrue, About the Firm, https://www.sughrue.com/about-the-firm (last visited Apr. 21, 2023); *see, e.g.*, *Lipman*, 284 F. Supp. 3d at 11 (finding the burden of transfer negligible where the attorney who was subject to the subpoena was represented by a "'global' law firm" that also represented a party in the underlying litigation). More importantly, Rule 45 itself allows an attorney authorized to practice in the compliance court to appear in the issuing court. *See* Fed. R. Civ. P. 45(f) ("[I]f the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court."). Additionally, the advisory committee's note to that rule further encourages judges "to permit telecommunications methods to minimize the burden a transfer imposes on nonparties," Fed. R.

Civ. P. 45 advisory committee's note to the 2013 amendments—methods with which the Northern District of Illinois is certainly familiar in light of the Covid-19 pandemic. Indeed, it is clear from the docket of the *Ingenus* case that Judge Rowland presides over remote proceedings. *See, e.g.*, Minute Entry, *Ingenus*, No. 22-cv-2868 (N.D. Ill. Apr. 20, 2023), ECF No. 47. "Therefore, there is a 'strong possibility that [Mr. Iyer's] counsel will not even need to leave Washington, D.C. to litigate the motion,'" *Lipman*, 284 F. Supp. 3d at 11 (quoting *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 49 (D.D.C. 2016)), or even to attend his deposition if it goes forward. Counsel for Nexus represented at the hearing that Mr. Iyer's deposition will occur either in-person in Washington, D.C., or remotely with Iyer appearing from this district. Hearing Tr. at 39–40; *see also* ECF No. 4 at 9. For the same reason, the fact that "all the areas of inquiry about which [he] would be questioned took place in this judicial district," ECF No. 5 at 15, makes little difference in terms of the burden that transferring the motion to quash to Illinois will impose.

Finally, to the extent that Petitioner complains about having to "take additional steps in a foreign jurisdiction," ECF No. 5 at 16, courts have found that the transfer of a motion to quash to the jurisdiction where the underlying litigation is pending should "require[] few, if any, modifications of the written submissions" and does not impose a significant burden. *In re Braden*, 344 F. Supp. 3d at 95 (quoting *Google*, 2015 WL 4930979, at *4). That is perhaps especially true here, where Petitioner had the opportunity to argue his motion to this Court in light of the new inequitable conduct counterclaim and Rule 12(c) motion attacking it but raised no new substantive arguments in support of quashing the subpoena. In short, the burden on Petitioner is nominal.

On the other side of the balance are circumstances that counsel strongly in favor of transfer. Most obvious is the Rule 12(c) motion pending before Judge Rowland that seeks dismissal of Nexus' inequitable conduct counterclaim. As noted above and in this Court's earlier Order, cases

from this district and elsewhere suggest that the viability of an inequitable conduct claim or defense is material—and can even be dispositive—on the issue of whether a patent prosecutor who also serves as litigation counsel will be subject to a limited deposition in a patent infringement case. *See, e.g.*, *Sterne, Kessler, Goldstein & Fox v. Eastman Kodak Co.*, 276 F.R.D. 376, 382–83 (D.D.C. 2011) (stating that "courts have permitted the deposition of patent prosecution counsel who is also serving as trial counsel where the knowledge of counsel was pertinent to a defense raised of inequitable conduct," but quashing the subpoena because no inequitable conduct defense had actually been pleaded in the relevant underlying patent infringement case (quoting *Genal Strap, Inc. v. Dar*, No. 04-cv-1691, 2006 WL 525794, at *2 (E.D.N.Y. Mar. 3, 2006))); *accord Sterne, Kessler, Goldstein & Fox v. Edwards Lifesciences Corp.*, No. 13-mc-48, 2013 WL 12303364, at *2 (D.D.C. Apr. 16, 2013); *Resqnet.Com, Inc. v. Lansa, Inc.*, No. 01-cv-3578, 2004 WL 1627170, at *3–5 (S.D.N.Y. July 21, 2004); *see also, e.g.*, *In re Insogna*, No. 19-cv-1589, 2020 WL 85487, at *11 (C.D. Cal. Jan. 3, 2020) ("Understandably, in cases where inequitable conduct is alleged, courts are more willing to permit depositions of opposing counsel, since their intent and mental state during the patent prosecution are directly at issue.  Here, however, Defendants do not allege an inequitable conduct defense." (internal citation omitted)); *Tech. Patents LLC v. Deutsche Telekom AG*, No. 07-cv-3012, 2010 WL 11556702, at *2 (D. Md. Mar. 29, 2010) ("Defendants are correct in asserting that there is a 'sizable body of patent law recognizing the right to depose patent prosecutors, even if trial attorneys as well.' 'Courts regularly permit depositions of patent prosecution counsel.'  However, this significant body of law exists where 'inequitable conduct' is alleged in patent cases." (internal citations omitted) (quoting *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 717–18 (D. Md. 2009))); *Ed Tobergte Assocs. v. Russell Brands, LLC*, 259 F.R.D. 550, 558 (D. Kan. 2009) ("Given the

numerous cases that permit the deposition of patent prosecution counsel [who also serves as trial counsel] where the defense of inequitable conduct has been raised, the Court finds that Defendant has established that the deposition of [the attorney] is the only reasonably practical means available for obtaining the information relevant to that defense."); *V. Mane Fils v. Int'l Flavors & Fragrances Inc.*, No. 06-cv-2304, 2008 WL 3887621, at *3–4 (D.N.J. Aug. 20, 2008) ("[M]ultiple jurisdictions recognize that mental impressions of the prosecuting patent attorney are not only relevant, but possibly crucial, to an inequitable conduct defense in subsequent litigation over that patent."); *Genal Strap*, 2006 WL 525794, at *2 (collecting cases); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 775–779 (N.D. Ill. 2005) (allowing the deposition of trial counsel who was involved in the patent prosecution process and therefore might have had a duty of candor to the PTO).  Briefing on the Rule 12(c) motion will be complete on May 31, 2023, after which Judge Rowland will decide whether the inequitable conduct claim survives and, if it does so, in what form.  Minute Entry, *Ingenus*, No. 22-cv-2868 (N.D. Ill. Apr. 11, 2023), ECF No. 44.  At the hearing, both parties before this Court agreed that the outcome of that motion will impact the resolution of the motion to quash.  Hearing Tr. at 10, 12.  Where the outcome of a motion pending before the issuing court will materially affect a subpoena-related motion in the district where compliance is required, compliance courts routinely transfer the subpoena-related motion to the issuing court.  *See, e.g.*, *CTIA–The Wireless Assoc. v. Cohen*, No. 20-cv-26, 2020 WL 11571515, at *2 (finding exceptional circumstances favored transfer where "[d]epending on how the [issuing court] resolves the issues [pending before it], a ruling by this Court on the motion to quash could potentially create inconsistent or conflicting rulings, disrupting the underlying litigation"); *see also, e.g.*, *Lipman*, 284 F. Supp. 3d at 13 (finding the fact that the issues "at the heart of" the motion to quash before the compliance court were also involved in a pending motion

15

before the issuing court favored transfer to that court); *Duck v. SEC*, 317 F.R.D. 321, 324–25 (D.D.C. 2016) (finding that the pendency of a motion for summary judgment in the issuing court that, if granted, would moot the motion to compel compliance with a subpoena in the compliance court counseled in favor of transfer "in order to avoid the 'risk of inconsistent results' concerning the discoverability of the documents [at issue], and . . . 'in order to avoid disrupting the issuing court's management of the underlying litigation'" (quoting Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments).

In addition, courts have recognized that, where questions regarding the relevance of subpoenaed material are likely to arise, the issuing court is generally in a better position to rule on those issues because of its greater familiarity with the underlying case. *See, e.g.*, *Flynn*, 216 F. Supp. 3d at 47 ("As other courts have noted, 'the relevance argument advanced emphasizes the need for the court where the underlying matter lies to decide the matter.'" (some internal quotation marks omitted) (quoting *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014)); *cf. Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 103 (D.D.C. 2005) ("A court with jurisdiction over a discovery dispute for an action pending in a different district generally has limited exposure to and understanding of the primary action. A court in such a situation should hence be cautious in determining relevance of evidence[.]" (internal citations omitted)). To determine whether to quash a subpoena, "courts generally employ a balancing test, weighing the burdensomeness to the moving party against the . . . need for, and the relevance of, the information being sought." *Flanagan*, 231 F.R.D. at 102. Here, before Nexus pleaded an inequitable conduct claim, Petitioner had already made arguments that some of the testimony sought would be irrelevant. *See* ECF No. 5 at 22, 24–26. Those relevance arguments would still be before this Court if that claim does not survive. Additionally, at the hearing, both parties agreed that if the inequitable conduct claim goes

forward, Judge Rowland's ruling as to the scope of that claim will affect the extent of any limitations to be imposed on Iyer's testimony. Hearing Tr. at 17–18, 21. More, Petitioner's deposition, should it be taken, is almost certain to raise issues of the applicability of attorney-client privilege. At the hearing, Nexus asserted that it believes the so-called "crime-fraud exception"—which pierces the privilege where it can be shown that a litigant "participated in a crime or fraud" and "consulted with counsel for the purpose of furthering a crime or fraud," *Alexander v. FBI*, 198 F.R.D. 306, 310 (D.D.C. 2000)—may apply and that the extent of any forfeiture of the privilege would depend on the contours of the inequitable conduct claim.[5] Hearing Tr. at 28, 43–44. Similarly, Ingenus and Leiutis indicated at the hearing that they may choose to defend against the inequitable conduct counterclaim by asserting an advice-of-counsel defense. *Id.* at 49; *see, e.g.*, *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 391 (W.D. Pa. 2005) (recognizing that defending against an inequitable conduct claim by asserting reliance on counsel's advice can waive privilege); *see also Barry v. Medtronic, Inc.*, No. 14-cv-104, 2016 WL 3583620, at *6 (E.D. Tex. May 8, 2016) (similar). Any waiver worked by such a defense could also be impacted by the scope of the inequitable conduct claim. Judge Rowland would be in a better position than this Court to interpret her ruling on the motion for judgment on the pleadings and the effect it might have on such questions. This is thus a situation similar to that in *In re Nonparty Subpoenas Duces Tecum*, where the court found that it "would make no sense" to decide a motion to quash before the issuing court resolved a closely-related pending motion and that the issuing court would be "far better positioned" thereafter to determine issues of burden and

---

[5] The Federal Circuit has made clear that "inequitable conduct is not by itself common law fraud," *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000), but that a finding of inequitable conduct in some circumstances "may also prove the crime or fraud exception to the attorney-client privilege," *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011).

attorney-client privilege issues that "partially turn[ed]" on whether an advice of counsel defense would be invoked in the underlying case. 327 F.R.D. 23, 26 (D.D.C. 2018).

Petitioner nevertheless urges the Court not to transfer the motion to quash, but to hold it in abeyance until the *Ingenus* court decides the Rule 12(c) motion, which (as he argued at the hearing) could be resolved "in a way which makes this moot" (presumably because if it is granted there will be no basis to depose Iyer—an issue this Court does not decide here). Hearing Tr. at 19. However, courts in similar situations—that is, courts faced with a motion to quash a subpoena that could be mooted by a pending motion in the issuing court—have noted that as a point *in favor of* transfer. *See, e.g. In re Nonparty Subpoena Duces Tecum*, 327 F.R.D. at 26; *Duck*, 317 F.R.D. at 324–25. More importantly, "[a] transfer will 'avoid disrupting the issuing court's management of the underlying litigation' and enable resolution of fundamental issues underlying this matter." *In re Nonparty Subpoena Duces Tecum*, 327 F.R.D. at 26 (quoting Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments). The pre-claim construction fact discovery deadline is fast approaching and, according to the Northern District of Illinois' Local Patent Rules, additional discovery may be granted in the discretion of the trial judge upon a showing by the parties that "further discovery is necessitated by the claim construction ruling." N.D. Ill. Patent Rule 1.3 comment. Waiting to decide this motion until after the Rule 12(c) motion is decided threatens to interfere with the discovery schedule set (or to be set) by Judge Rowland, who should be allowed to navigate her court's local rules and set an appropriate schedule without disruptions attributable to this Court's schedule or delayed decision on the motion to quash—which necessarily would follow Judge Rowland's decision on the motion for judgment on the pleadings. *Cf., e.g.*, *CFA Inst.*, 2020 WL 1695050, at *2 (transferring a motion to quash to the issuing court where the discovery deadline has passed in order to avoid interfering with that court's management of its

schedule). And, of course, delay will not simplify the complications outlined above that this Court will face if the inequitable conduct claim proceeds. In short, holding this motion in abeyance is inefficient and potentially disruptive to the issuing court's management of the underlying litigation.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Respondent's request to transfer this matter to the Northern District of Illinois is **GRANTED**. The Clerk of Court is respectfully directed to transfer the case and terminate all pending motions in this Court.

**SO ORDERED**.

Date: April 21, 2023

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE